RICHARD L. HOLMES, Retired Appellate Judge.
Brian Johnson and Angie Johnson filed a multi-count complaint against numerous defendants, including Chrysler Service Corporation (Chrysler). We would note that the Johnsons have resolved their claims against all defendants, except Chrysler. Consequently, this appeal deals only with the John-sons’ claims against Chrysler.
In their complaint, the Johnsons contended that they were entitled to damages because, they alleged, Chrysler was guilty of bad faith, suppression, misrepresentation, and conspiracy to defraud. The basis of the com *474 plaint against Chrysler revolved around Chrysler’s alleged refusal to pay for repairs covered under a used-vehicle service contract that the Johnsons purchased for a 1991 Dodge Stealth automobile.
We would note that the Johnsons alleged the following, in pertinent part, in their complaint: (1) Chrysler was guilty of “bad faith” because Chrysler “intentionally refused to pay such benefits [under the contract] without legal or justifiable reason or [has] failed to properly investigate the claim.” (2) Chrysler “sold [the Johnsons] the [contract] knowing that [Chrysler] would not pay for the claims which were represented to [the Johnsons] that it would pay for” and the Johnsons “relied upon these representations and were proximately injured.” (3) Chrysler “knew that the [contract] would not [cover] most breakdowns, yet suppressed or misrepresented this material fact to [the Johnsons], willfully, recklessly, or innocently, proximately injuring them.” (4) Chrysler “conspired to defraud and otherwise harm [the Johnsons,] and such conspiracy proximately caused [the Johnsons’] injuries.”
Chrysler filed an answer, denying the allegations. Chrysler also filed a summary judgment motion, along with a brief and documentation in support of its motion. The Johnsons filed a response in opposition to the summary judgment motion, along with a brief and documentation in support of their opposition to the motion.
After a hearing the trial court issued an order, entering a summary judgment in favor of Chrysler. The Johnsons filed a motion to alter, amend, or vacate the judgment, which was denied.
The Johnsons appeal, contending that the trial court committed reversible error when it entered a summary judgment in favor of Chrysler.
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie showing that no genuine issue of a material fact exists, then the burden shifts to the non-moving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
We would note that the appellate court must view the evidence in a light most favorable to the non-moving party and that all reasonable doubts must be resolved against the moving party. McClendon v. Mountain Top Indoor Flea Market Inc., 601 So.2d 957 (Ala.1992).
Our review of the record reveals the following pertinent facts: In March 1995 the Johnsons purchased a used 1991 Dodge Stealth automobile (automobile) from a Chrysler-Plymouth-Dodge dealership. The Johnsons purchased the automobile “as is,” with no warranty. At the same time, the Johnsons purchased a Chrysler 24/24 Used Vehicle Service Contract (contract) for the automobile at a cost of $1,275. The purchase price of the automobile, which had 90,036 miles on it, was $17,040.15.
After purchasing the automobile, the John-sons experienced numerous mechanical problems and on several occasions returned the automobile to the dealership for repairs.
The Johnsons contend that while the dealership repaired most of the problems that they experienced with the automobile and while Chrysler paid for most of the covered repairs, the dealership did not repair, nor did Chrysler pay for, the problems with the power door locks and the problems with the car alarm system.
We would note that Angie Johnson testified to the following in her deposition:
“Q. Okay. Do you have any idea why this clutch service was not paid for under the service contract?
“A. No. I think when we first got it, too, something was wrong with the clutch. It messed up when we first got it and they *475 fixed it. I think it did, but we didn’t ever get a receipt on it. I don’t know.
“Q. Okay. Do you have any evidence that [Chrysler] intentionally refused to pay for this service?
“A. No.
“Q. To your knowledge, has Chrysler ever turned down payment on this service?
“A. Yeah. I mean, I asked them if [the contract] covered [the clutch problem] and they told me no.
“Q. You asked who?
“A. Tommy, the one I always dealt with. I think it was him I talked to.
“Q. At [the dealership]?
“A. Uh-huh (Witness nods head).
“Q. But you didn’t talk to anybody from Chrysler?
“A. No.”
Angie Johnson also testified to the following:
“Q. Is there anything that you think Chrysler should have told you that they didn’t tell you?
“A. Well, if [the dealership] was going to sell me the car, it looks like, I don’t know, [the dealership and Chrysler] would have fixed it and all.
“Q. You understand Chrysler didn’t sell you the car?
“A. Yeah, but I know they are all in with [the dealership], so if [the dealership] couldn’t have fixed it, [the dealership] should have got Chrysler to fix it.
“Q. Okay. Do you have any evidence of some conspiracy between Chrysler and any of the other defendants in this case?
“A. No.
“Q. Do you know whether or not Chrysler has investigated payment of any claims under this service contract?
“A. No.
[[Image here]]
“Q. The only thing you are complaining about with the Chrysler service contract is the one time that [Chrysler] did not pay?
“A. Well, that is not — I mean, all of the times [the dealership and Chrysler] didn’t fix it.
“Q. Do' you understand what a service contract is?
“A. You mean, where we got it written up (indicating).
• “Q. Yeah. The service contract says [Chrysler] will pay for any repairs that have to be made that meet the description in the service contract? ■
“A. Yes.
“Q. That’s all that Chrysler has agreed to do?
“A. Yeah.
“Q. You agree that except far that one time you never had to pay anything for repairs?
. “A. Yeah.
“Q. So your only complaint is that [Chrysler] didn’t pay on this one occasion?
“A. Yeah.
“Q. Have you read the service contract, the Chrysler service contract?
“A. Yes.
“Q. Do you know whether or not it says anything about the specific repair that you’re complaining about, whether or not that would be covered?'
“A. .1 don’t know.”
(Emphasis added.)
We would note that the repair which the Johnsons say that Chrysler did not pay for was the replacement of the clutch. However, the contract states, “Standard transmission clutch parts are not covered at any time.” Consequently, the contract did not cover the clutch repair, and Chrysler cannot be faulted for not paying for this repair.
We would also note that Angie Johnson admitted in her deposition that she had no evidence of any conspiracy between Chrysler and any of the other defendants.
In their response in opposition to Chrysler’s summary judgment motion the Johnsons contended that a summary judgment was inappropriate for Chrysler because, they said, Chrysler refused to pay for the defects in the power door locks and in the car alarm system. However, as noted above, Angie Johnson admitted that the *476 Johnsons had to pay for repairs only on one occasion (the clutch repair). Consequently, it is undisputed that all claims for repairs submitted to Chrysler were paid.
As previously noted, the Johnsons complain that the dealership neither repaired, nor did Chrysler pay for, the defects in the power door locks and in the car alarm system. Angie Johnson admitted that under the terms of the service contract, Chrysler had agreed to pay for any repairs that had to be made which were covered by the service contract.
While there was evidence that these defects in the power door locks and in the car alarm system may have been covered by the contract, there is no evidence that the dealership made these repairs and submitted the claims for repair to Chrysler for payment. Without a claim, there can be no denial of the claim. Additionally, there is no evidence that Chrysler refused to authorize payment for repairs to the power door locks and the car alarm system. Consequently, the Johnsons failed to present evidence sufficient to prove the elements of a bad faith claim. See S & W Properties, Inc. v. American Motorists Ins. Co., 668 So.2d 529 (Ala.1995).
However, the Johnsons contend that the dealership was Chrysler’s agent and that because they made the dealership aware of the problems with the power door locks and the car alarm system, Chrysler shoüld be charged with the knowledge of its agent. The Johnsons further contend that Chrysler shoidd be held responsible for the actions of its agent (the dealership) in failing to make the necessary repairs and in failing to advise the Johnsons that the repairs were covered under the contract.
Our supreme court stated the following in Wood v. Shell Oil Co., 495 So.2d 1034, 1035-36 (Ala.1986):
“Summary judgment on the issue of agency is generally inappropriate because this issue is a question of fact to be determined by the trier of fact. This is not to say, however, that agency may be presumed; the party asserting it has the burden of adducing sufficient evidence to prove its existence.”
(Citations omitted.) In the present case, although the Johnsons contended that a principal-agency relationship existed between Chrysler and the dealership, they failed to present any evidence to prove its existence.
In light of the foregoing, the trial court’s judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED.
All the judges concur.